UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AIMEE F.,

                Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. C22-5467 JHC

**ORDER REVERSING AND REMANDING DENIAL OF BENEFITS**

Plaintiff seeks review of the denial of her applications for Disability Insurance Benefits. Plaintiff contends the ALJ erred by failing to properly evaluate the medical opinions of Dr. Baker and Dr. Campbell and her symptom testimony, and by failing to properly assess her residual functional capacity (RFC). Dkt. 11. As discussed below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

**I**
**BACKGROUND**

Plaintiff is 52 years old years old, has at least a high school education, and previously worked as an executive assistant. Admin. Record (AR) 326, 478. On January 25, 2019, Plaintiff applied for benefits, alleging disability as of August 20, 2015. AR 541, 692–93. Plaintiff's

ORDER REVERSING AND REMANDING
DENIAL OF BENEFITS - 1

applications were denied initially and on reconsideration. AR 587–98, 600–11. After the ALJ conducted a hearing on March 6, 2021, in which Plaintiff amended her alleged onset date to December 22, 2018, the ALJ issued a decision finding Plaintiff not disabled. AR 311–36, 470–506.

## II
## THE ALJ'S DECISION

Using the five-step disability evaluation process,[1] the ALJ found:

**Step one:** Plaintiff did not engage in substantial gainful activity between her alleged onset date of August 20, 2015 through her date last insured of December 31, 2020.

**Step two:** Plaintiff had the following severe impairments: obesity, degenerative disc disease, sleep apnea, status post traumatic brain injury, Sjogren's syndrome, and post-traumatic stress disorder (PTSD).

**Step three:** These impairments did not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity:** Plaintiff was able to perform light work except she could occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds. She could frequently balance, stoop, kneel, crouch, and crawl. She should never work at unprotected heights or with moving mechanical parts. She could perform simple, routine tasks. She could occasionally interact with supervisors and coworkers but only rarely or less than occasionally to never interact with the public. She required the ability to sit/stand every 45 minutes for 5-10 minutes without being off task.

**Step four:** Plaintiff was unable perform past relevant work.

**Step five:** As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled.

AR 314–27. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. Tr. AR 304–10.[3]

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.
[3] The rest of the procedural history is irrelevant to the outcome of the case and is thus omitted.

ORDER REVERSING AND REMANDING
DENIAL OF BENEFITS - 2

## III
### DISCUSSION

The Court may reverse the ALJ's decision only if it is legally erroneous or not supported by substantial evidence of record. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). The Court must examine the record but cannot reweigh the evidence or substitute its judgment for the ALJ's. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When evidence is susceptible to more than one interpretation, the Court must uphold the ALJ's interpretation if rational. *Ford*, 950 F.3d at 1154. Also, the Court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

A.   Medical Opinion Evidence

Plaintiff contends the ALJ erred in evaluating the medical opinions of (1) Dr. Baker and (2) Dr. Campbell. Dkt. 11 at 3–12.

Plaintiff submitted her applications after March 27, 2017. AR 541, 692–93. Under the regulations applicable to this case, ALJs must consider every medical opinion in the record and evaluate each opinion's persuasiveness, using five factors (supportability, consistency, relationship with claimant, specialization, and other), with supportability and consistency being the two most important factors. *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022); 20 C.F.R. § 416.1520c(a). Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence." 20 C.F.R. § 416.1520c(c)(1). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). "An ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial

evidence." *Woods*, 32 F.4th at 792.

            1.     Dr. Baker

Dr. Elizabeth Baker, Plaintiff's primary care physician, provided four medical opinions about Plaintiff's physical and mental impairments in April 2018, March 2019, June 2020, and July 2020. AR 1760–73, 2039. Plaintiff assigns error to only the ALJ's evaluations of the opinions provided in April 2018, March 2019, and June 2020, thus the Court limits its analysis to such. *Carmickle v. Commissioner, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n. 2 (9th Cir. 2008) (quoting *Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1164 (9th Cir. 2003)) (finding that the court need not address matters that are not "'specifically and distinctly'" argued in the plaintiff's opening brief).

*Physical Impairments.* In April 2018, Dr. Baker opined that Plaintiff can lift and carry 10 pounds occasionally and less than 10 pounds frequently, and stand/walk for 20 to 30 minutes at a time for two hours in an eight-hour workday. AR 1761, 1770. Dr. Baker also opined that Plaintiff needs to periodically alternate between sitting and standing and is limited in her upper extremities. AR 1761. In March 2019, Dr. Baker opined that Plaintiff can sit and stand/walk for two hours in an eight-hour workday and needs to take 15- to 20-minute unscheduled breaks two to three times daily. AR 1478. Dr. Baker also opined that if sitting during an eight-hour workday, Plaintiff needs to elevate her feet for 60 percent of the day. *Id*. Dr. Baker further opined that if engaging in occasional standing/walking, Plaintiff needs to use a cane or another assistive device to help with her balance. *Id*. In June 2020, Dr. Baker opined that Plaintiff can perform a job in a seated position for one to two hours or while standing and/or walking for less than one hour during an eight-hour workday. AR 825. Dr. Baker also opined that Plaintiff must avoid sitting continuously during an eight-hour workday and must get up to move around every

ORDER REVERSING AND REMANDING
DENIAL OF BENEFITS - 4

hour for five minutes. *Id*. Dr. Baker further opined that it is medically necessary for Plaintiff to elevate both of her legs while sitting for 20 minutes a few times throughout the day. *Id*.

*Mental Impairments*. As to Plaintiff's mental impairments, in 2019, Dr. Baker opined that Plaintiff is mostly markedly or extremely limited in her abilities to perform unskilled work. AR 1481–82. And in 2020, she opined that in a competitive environment on a sustained and ongoing basis, Plaintiff is mildly to moderately limited in understanding and memory, mildly or markedly limited in concentration and persistence, mildly or markedly limited in social interactions, and moderately limited in adaptation. *See* AR 833.

The ALJ first rejected Dr. Baker's opinions about Plaintiff's physical and mental impairments because of their inconsistency with the objective medical evidence. *See* AR 325. A medical opinion's consistency with "the evidence from other medical sources and nonmedical sources in the claim" is an important factor the ALJ must consider under the new regulations. *See* 20 C.F.R. § 404.1520c(c)(2). The ALJ here did not specify which "objective medical evidence" varies from Dr. Baker's opinions, but elsewhere in his decision, the ALJ discussed Plaintiff's physical and mental examinations. *See Kaufmann v. Kijakazi,* 32 F.4th 843, 851 (9th Cir. 2022) (finding that a court "clearly err[s] by overlooking the ALJ's full explanation"); AR 320–23.

The evidence cited by the ALJ about Plaintiff's physical impairments shows Plaintiff's extremities were symmetrical, she exhibited normal range of motion, and she had normal sensation with no lower extremity edema. AR 1585, 1619–20, 1624, 1627. Notably, in an April 2019 physical examination, Plaintiff denied myalgias, arthralgias, and joint effusion, and was found to have a normal range of motion in her bilateral upper and lower extremities, with no clubbing, cyanosis, edema, or swollen joints. AR 1487–88. Plaintiff was observed to have had

no difficulty with getting off and on the examination table, walking on her heels and toes, squatting and rising, and displaying normal tandem gait without an assistive device.  AR 1489. Plaintiff also displayed normal range of motion in her cervical and lumbar spine, knee, and ankle, and was found to have no limitations with standing, sitting, lifting or carrying.  AR 1489–91.  The ALJ's assessment of the objective medical evidence is supported by substantial evidence; therefore, in rejecting Dr. Baker's opinions about Plaintiff's physical impairments for their inconsistency with Plaintiff's medical record, the ALJ did not err.

The ALJ did, however, err in rejecting Dr. Baker's opinions about Plaintiff's mental impairments.  The cited evidence shows Plaintiff often presented fully alert and oriented, cooperative with appropriate appearance, and with euthymic mood and normal speech.  AR 2066, 2069, 2072, 2076, 2079, 2082, 2085, 2088, 2434, 2506, 2509, 2512, 2515, 2518, 2520, 2523, 2526, 2528, 2531.  But the ALJ does not explain how these findings are necessarily inconsistent with Plaintiff's mental limitations in a competitive work setting.  Without further elaboration as to how Plaintiff's presentations negate her mental limitations in the context of "a competitive environment on a sustained and ongoing basis," the Court cannot confidently say the ALJ reasonably rejected this portion of Dr. Baker's opinion and thus finds that the ALJ erred in doing so.  *See* AR 833.

In sum, the ALJ partially erred in evaluating Dr. Baker's opinions.  Because the ALJ's rejection of Dr. Baker's opinion about Plaintiff's mental impairments was not supported by substantial evidence, the ALJ erred with the evaluation of that portion of Dr. Baker's opinion.  But because the ALJ's rejection of Dr. Baker's opinions about Plaintiff's physical impairments was supported by substantial evidence, the ALJ did not err with the evaluation of that portion of Dr. Baker's opinion.  Also, because the ALJ provided at least one valid reason in doing so, the

Court need not assess the other reasons offered by the ALJ in rejecting Dr. Baker's opinion about Plaintiff's physical impairments. Even if the ALJ committed error on those grounds, those errors would be harmless. *See Carmickle*, 533 F.3d at 1162.

        2.      Dr. Campbell

Dr. Meredith Campbell completed an evaluation of Plaintiff in April 2019. AR 1495–1501. She opined that Plaintiff is moderately impaired in her daily activities, understanding, remembering, and carrying out short, simple instructions, and in her ability to make judgments on simple work-related decisions. AR 1501. She further opined that Plaintiff is markedly impaired with her social activities, her ability to understand, remember and carry out complex instructions, her ability to make judgments on complex work-related decisions, and ability to respond appropriately to usual work situations and to changes in a routine work setting. *Id*.

Plaintiff first contends the ALJ erred because despite finding Dr. Campbell's moderate limitations "persuasive," the ALJ omitted those limitations—specifically, that she is moderately limited in understanding, remembering, and carrying out short and simple instructions—in the residual functional capacity (RFC) assessment. Dkt. 11 at 13–15; AR 324. Plaintiff contends that because of the ALJ's omission, the ALJ used erroneous RFC to find at step five that she can perform jobs requiring Reasoning Level 2, one level higher than what Dr. Campbell had opined Plaintiff was capable of. *Id*. at 15–16.

In pertinent part, the ALJ assessed that Plaintiff has the RFC to perform "simple, routine tasks." AR 319. The Commissioner argues the ALJ did not omit Dr. Campbell's findings and instead reasonably translated it by restricting Plaintiff to simple, routine tasks in her RFC. *See* Dkt. 12 at 15–16. The Commissioner's citation to *Stubbs-Denielston v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) in support of this argument is convincing. *See* Dkt. 12 at 15–16. In that

case, the Ninth Circuit found that an RFC that limits a claimant to "simple, routine" work properly incorporated the restrictions of a medical opinion that limited the claimant to "short, simple instructions." *See Stubbs-Denielston* 539 F.3d at 1174–75. Here, Dr. Campbell found that Plaintiff was moderately limited in carrying out short, simple instructions, and the ALJ assessed Plaintiff had the RFC to perform simple, routine tasks. AR 319, 1501. Given the similarities with *Stubbs-Denielston*, the Court cannot say the ALJ's RFC determination is an unreasonable deviation from Dr. Campbell's opinion. As the Commissioner points out, "the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). The ALJ's assessment that Plaintiff has the RFC to perform simple routine tasks, though not identical to Dr. Campbell's opinion, nonetheless accounts for and incorporates Dr. Campbell's opinion that Plaintiff is moderately limited in understanding, remembering, and carrying out short, simple instructions. The Court, therefore, finds the ALJ properly evaluated properly incorporated this portion of Dr. Campbell's opinion into Plaintiff's RFC.

The Court also finds that the ALJ's reliance on this RFC did not lead to erroneous findings at step five. At step five, the ALJ found that based on Plaintiff's RFC, Plaintiff can perform the occupations of router, marker, and routing clerk. AR 327. Plaintiff correctly points out that these jobs require Reasoning Level 2, but that they␣does not mean they are in conflict with Dr. Campbell's opinion that Plaintiff be limited to short, simple instructions. *See* Dkt. 11 at 16. In *Ranstrom v. Colvin*, 622 F. App'x 687, 688 (9th Cir. 2015), the Ninth Circuit found in an unpublished opinion that "[t]here is no appreciable difference between the ability to make simple decisions based on 'short simple instructions and the ability to use commonsense understanding to carry out 'detailed but *uninvolved* . . . instructions,' which is what Reasoning Level 2

ORDER REVERSING AND REMANDING
DENIAL OF BENEFITS - 8

1  requires." The Fourth, Eighth, and Eleventh Circuits have reached the same conclusion in
2  published opinions. *See Buckwalter v. Acting Commissioner of Social Sec.*, 5 F.4th 1315, 1321-
3  1324 (11th Cir. 2021); *Lawrence v. Saul*, 941 F.3d 140 (4th Cir. 2019); *Moore v. Astrue*, 623
4  F.3d 599 (8th Cir. 2010). Based on this persuasive federal appellate authority, the Court finds
5  the ALJ's step five findings were not erroneous.

6  Plaintiff next contends the ALJ erred in rejecting the marked limitations opined by Dr.
7  Campbell. Dkt. 11 at 16–17. The ALJ first rejected Dr. Campbell's marked limitations because
8  they were "largely based on [Plaintiff's] self-reports." AR 324. "If a treating provider's
9  opinions are based 'to a large extent' on an applicant's self-reports and not on clinical evidence,
10 and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's
11 opinion. However, when an opinion is not more heavily based on a patient's self-reports than on
12 clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*,
13 763 F.3d 1154, 1162 (9th Cir. 2014) (internal citations omitted). The record shows Dr. Campbell
14 performed a mental status exam, reviewed Plaintiff's medical records, and provided her own
15 diagnostic impressions in completing her evaluation. *See* AR 1499, 1500. The ALJ's finding is
16 not supported by substantial evidence; therefore, in rejecting this portion of Dr. Campbell's
17 opinion for its heavy reliance on Plaintiff's self-reports, the ALJ erred.

18 The ALJ also rejected Dr. Campbell's marked limitations because "the medical records
19 show that [Plaintiff] is largely appropriate when interacting with her providers and further
20 generally demonstrated normal mood and affect." AR 324. As previously stated, under the new
21 regulations, a medical opinion's consistency with "the evidence from other medical sources and
22 nonmedical sources in the claim" is an important factor the ALJ must consider. *See* 20 C.F.R. §
23 404.1520c(c)(2). The ALJ's cited evidence shows Plaintiff presented calmly, with normal mood

and affect and normal behavior and thought content. AR 1587, 1620, 1627. But as discussed above, Plaintiff's presentations during her appointments do not necessarily negate Plaintiff's mental limitations in a work setting. Without further elaboration as to how Plaintiff's normal mood and affect negates Dr. Campbell's opinion that Plaintiff is limited understanding, remembering, and carrying out complex instructions, making complex, work-related judgments, and responding appropriately to usual work situations, the Court cannot confidently say the ALJ gave a valid reason to reject the marked limitations opined by Dr. Campbell.

In sum, though the ALJ properly incorporated into Plaintiff's RFC the portion of Dr. Campbell's opinion that he found persuasive, the ALJ failed to provide at least one valid reason to reject the portions he found unpersuasive. This was error as "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792.

      B.     Plaintiff's Symptom Testimony

Plaintiff testified to having migraines, which can cause blindness, paralysis, and vertigo. AR 482, 485. Plaintiff explained that she previously received migraines shots as treatment, but they worked only for two weeks. AR 496. Plaintiff also testified to having an esophagus problem, which prevents her from being able to keep food down. AR 485. Plaintiff further testified that because of her Sjorgen's syndrome, she has dry eyes, fibromyalgia, liver issues, and heart issues. AR 485. Plaintiff also testified that her sciatica affects her legs, lower back, neck, and arms. AR 492. She explained she can walk or stand only for five to 15 minutes before needing to take a break. AR 493. She testified that usually uses a cane and knee brace and has been doing so for the last five years. AR 497–98. She explained that she limits her driving to one hour to avoid excessive stimulation. AR 494. Plaintiff explained her conditions affect her

ability to including putting on and removing her shoes, showering, combing her hair, and brushing her teeth. AR 495. As for her mental health, Plaintiff stated that she has "severe PTSD" and memory issues. AR 484, 487.

When, as here, an ALJ determines a claimant has presented objective medical evidence establishing underlying impairments that could cause the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ can only discount the claimant's testimony as to symptom severity by providing "specific, clear, and convincing" reasons supported by substantial evidence. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017).

In this case, the ALJ first rejected Plaintiff's testimony about her physical symptoms because of its inconsistency with the objective medical evidence, which "remained generally unremarkable." AR 321. As previously discussed, Plaintiff's record included evidence showing her extremities were symmetrical with normal range of motion and sensation. AR 1585, 1619, 1620, 1624, 1627, 1630. Plaintiff herself denied myalgias, arthralgias, and joint effusion and was found to have a normal range of motion in her bilateral upper and lower extremities, with no clubbing, cyanosis, edema, or swollen joints. AR 1487–88. Plaintiff was also observed to have had no difficulty with getting off and on the examination table, walking on her heels and toes, squatting and rising, and finger to nose. AR 1489. Plaintiff also displayed normal tandem gait, and had normal range of motion in her cervical and lumbar spine, knee, and ankle. *Id*. Plaintiff was assessed to have no limitations with standing, sitting, lifting or carrying, postural and manipulative activities, and found to not need an assistive device. AR 1491. The ALJ also pointed to Plaintiff's normal neurological examination, normal findings from her MRI, and intact cranial nerves. AR 1580, 1620, 1624, 1627, 1792, 1796.

The ALJ specifically rejected Plaintiff's testimony about her migraines because they

improved with medication. AR 321–22. "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for [social security disability] benefits." *Warre ex rel. E.T. IV v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). The record shows Plaintiff responded to her treatments and that they led to a "[c]omplete resolution of her headaches" and neurologic symptoms. *See* AR 1628. The record also shows Plaintiff herself reported that medication has been helpful for her frequent headaches, though it is not always available, and that she felt "significant improvement to the point that she is essentially pain-free." AR 1578, 1622.

As to Plaintiff's mental impairments, the ALJ identified evidence of Plaintiff's normal and intact memory and Plaintiff's mental status examinations showing she often presented with full affect and logical thought processes, despite her occasional depressed mood. AR 1499, 1580, 1624, 2066, 2069, 2072, 2076, 2079, 2082, 2085, 2088, 2506, 2509, 2512, 2515, 2518, 2520, 2523, 2526, 2528, 2531. Overall, the ALJ's assessment of the objective medical evidence supports his finding that Plaintiff's testimony was inconsistent with the record. Thus, in rejecting Plaintiff's testimony for this reason, the ALJ did not err.

The ALJ also rejected Plaintiff's testimony because of her activities of daily living. AR 321, 232. An ALJ may reject a plaintiff's symptom testimony based on her daily activities if they contradict her testimony or "meet the threshold for transferable work skills." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). Here, the ALJ first pointed out that in a 2019 examination, Plaintiff reported that she could drive, shop, manage her finances, and bathe and dress herself without difficulty, contrary to her testimony. *See* AR 321. While the examination does state that Plaintiff did not have difficulties with cooking and housekeeping, it also merely states Plaintiff is "able to" attend to her personal

care, drive, and shop, thus the ALJ's finding is not supported by the record. *See* AR 1486. The ALJ also pointed out that Plaintiff "reported that she was capable of doing laundry, dishes, and preparing simple meals." AR 323 (citing AR 1497). But Plaintiff did not testify that she could not perform these activities—rather, she explained that her conditions affect her ability to do them. *See* AR 481–82. Moreover, the cited evidence tracks Plaintiff's testimony, as it states Plaintiff's headaches prevent her being able to clean a lot, she does not like going to the grocery store, and that she forgets about her laundry. *See* AR 1497. Because Plaintiff's activities of daily living do not necessarily contradict Plaintiff's statements, the ALJ erred in rejecting her testimony for this reason. But because the ALJ provided at least one valid reason to do so, this error is deemed harmless. *See Carmickle*, 533 F.3d at 1162.

    C.    RFC Assessment

Plaintiff also contends the ALJ's RFC assessment that she be limited to perform light exertional work is "without support." Dkt. 11 at 17–18. The ALJ assesses a claimant's RFC "based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545.

Here, the ALJ assessed Plaintiff's RFC by considering the medical opinions of Dr. Gillum and Dr. Barrett, who both opined that Plaintiff could occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, AR 323 (citing AR 554–55). The ALJ also considered the medical opinion of Dr. Rangole, who opined that Plaintiff has no physical limitations. *Id*. (citing AR 1491.) The ALJ determined that their opinions were only partially persuasive because Plaintiff's record indicated degenerative disc disease, and thus "more consistent with [Plaintiff] being capable of light exertional work." *See* AR 323. The ALJ's RFC determination was based on medical evidence; therefore, Plaintiff has failed to show error with the ALJ's reasoning.

But because the Court has determined that the ALJ partially erred in evaluating the medical opinions of Dr. Baker and Dr. Campbell, and such errors adversely affect the ALJ's RFC determination, the ALJ must still reassess Plaintiff's RFC.  *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("an RFC that fails to take into account a claimant's limitations is defective").  On remand, the ALJ must reevaluate Dr. Baker's and Dr. Campbell's opinions about Plaintiff's mental impairments, reevaluate all relevant steps of the disability evaluation process, and conduct all proceedings necessary to reevaluate the disability determination in light of this order.

## IV
## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

DATED this 10th day of January, 2023.

John H. Chun
United States District Judge